

Brent O. Hatch (5715)
Mark R. Clements (7172)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Attorneys for Defendants

---

IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MK GOLD COMPANY,<br><br>          Plaintiff,<br><br>v.<br><br>MORRISON KNUDSEN CORPORATION,<br>a Delaware corporation,<br><br>          Defendant. | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO PROHIBIT PLAINTIFF MK GOLD FROM FILING ADDITIONAL EXPERT REPORTS** |
| LEUCADIA NATIONAL CORPORATION,<br>a New York corporation,<br><br>          Plaintiff,<br><br>v.<br><br>MORRISON KNUDSEN CORPORATION,<br>a Delaware corporation, ROBERT A.<br>TINSTMAN, an individual, STEPHEN G.<br>HANKS, an individual, and JOHN DOES<br>1-10, individuals,<br><br>          Defendants. | Civil No. 2:96CV00935S<br><br>Civil No. 2:98CV 0327S<br><br>Judge Ted Stewart<br>Magistrate Judge Ronald N. Boyce |



Defendant Morrison Knudsen Corporation ("MKC"), now known as Washington Group International ("Washington"), respectfully submits the following Memorandum in Support of Motion to Prohibit Plaintiff MK Gold Company ("MK Gold") from Filing Additional Expert Reports.

## INTRODUCTION

General discovery in this case has been closed for well over a year and trial in this matter is set to begin on April 2, 2001. Despite these facts, MK Gold has informed MKC that it intends to file two additional reports – a new expert report on damages and an expert report on the Apex San Cristobal Project in Bolivia. If MK Gold is allowed to file its proposed expert reports at this late date, MKC will be unduly prejudiced. MKC's ability to adequately conduct expert discovery, obtain rebuttal experts, file rebuttal reports, and prepare, file and have heard motions for summary judgment and motions in limine prior to trial will be substantially compromised if not made impossible.

MK Gold certainly could have and should have filed its expert reports several months ago. Indeed, in the case of its purported new report on damages, MK Gold's damage expert, John Brough, testified in November 1998 that he would be issuing his new report by the end of that year. Mr. Brough still has not filed his new report. With respect to any purported expert report on San Cristobal, MK Gold stated in a letter dated November 12, 1998 that it would be shortly identifying an additional expert witness on the issue of whether the San Cristobal project was a base or precious metals project. Well over two years later, MK Gold still has not filed an expert report on this issue.

2

MKC's Motion should be granted and MK Gold should be prohibited from filing any additional or revised expert reports at this late date.

## STATEMENT OF MATERIAL FACTS

1.      On November 12, 1998, David Greenwood, counsel for MK Gold, sent a letter to Brent Hatch, counsel for MKC, stating that MK Gold would soon be identifying "an additional expert witness on the issue of the San Cristobal mine being primarily a silver mine." (Exh. 1, Letter from David Greenwood to Brent Hatch dated November 12, 1998.)

2.      On November 23, 1998, MKC took the deposition of MK Gold's designated damages expert, John Brough.  During that deposition, Mr. Brough testified that he would be preparing a revised damage report and that the report would be completed by the end of 1998. (Exh. 2, Deposition of John Brough at pp. 37-38.)

3.      On May 18, 1999, Mark Clements, counsel for MKC, sent Mr. Greenwood a letter requesting a date when Mr. Brough's final damage study would be completed and produced.  Mr. Greenwood did not respond to this letter.  (Exh. 3, Letter from Mark Clements to David Greenwood dated May 18, 1999.)

4.      On June 14, 1999, Mr. Greenwood sent Mr. Clements a letter referencing an enclosed letter from Stan Dempsey, an MK Gold expert, stating that in his opinion the San Cristobal Project was "over its life primarily a silver mine." (Exh. 4, Letter from David Greenwood to Mark Clements dated June 14, 1999 with attached letter from Stan Dempsey to David Greenwood dated June 11, 1999.)

5.    On August 16, 1999, Mr. Clements sent Mr. Greenwood a letter requesting that MK Gold state whether Mr. Dempsey would be asked to provide expert testimony on San Cristobal at trial and further requesting that Mr. Greenwood forward all documents relied upon by Mr. Dempsey in preparing his letter. Mr. Greenwood did not respond to this letter and MK Gold, to date, has not produced any documents Mr. Dempsey purportedly relied upon in issuing his June 11, 1999 letter. (Exh. 5, Letter from Mark Clements to David Greenwood dated August 16, 1999.)

6.    On November 9, 2000, the Court entered an Order upon stipulation of the parties allowing a limited discovery period regarding the San Cristobal Project. The discovery period was to conclude on January 31, 2001. (Exh. 6, Order dated November 9, 2000.)

7.    On January 8, 2001, Mr. Clements sent a letter to Steve Christiansen, counsel for MK Gold, requesting that MK Gold declare whether it intended to produce any additional expert reports, and if so, when. (Exh. 7, Letter from Mark Clements to Steve Christiansen dated January 8, 2001.)

8.    On January 18, 2001, Mr. Christiansen sent Mr. Clements a letter stating that MK Gold intended to file expert reports from Stan Dempsey and Frank McAllister on the San Cristobal Project and new damage report from John Brough. The letter did not provide any dates for when the reports would be filed. (Exh. 8, Letter from Steve Christiansen to Mark Clements dated January 18, 2001.)

9.    On February 6, 2001, Mr. Clements sent Mr. Greenwood a letter requesting information regarding whether MK Gold still intended to file additional expert reports and

expressing concern about the pending trial date.  To date, there has been no response to this

letter.  (Exh. 9, Letter from Mark Clements to David Greenwood dated February 6, 2001.)

## ARGUMENT

### I.   MK GOLD SHOULD BE PROHIBITED FROM FILING A REVISED DAMAGE STUDY AT THIS LATE DATE.

MK Gold has unreasonably delayed in filing expert reports in this case.  MK Gold

represented that its damage expert, John Brough, would file a revised damage study by the end of

1998.  More than two years have passed and Mr. Brough has not filed any additional report.  This

substantial delay is not attributable to MKC.  The only new issue in this case over the past

several months is that MKC/Washington was awarded the contract mining bid at San Cristobal.

Even incorrectly assuming that MK Gold was somehow damaged by this event,[1] Mr. Brough has

had all relevant documents regarding San Cristobal for more than a month, but has failed to

update his report despite the constant requests from MKC's counsel.

Mr. Brough certainly could and should have revised his report with respect to all other

aspects of the case years ago.  If Mr. Brough is allowed to file a revised expert report at this late

date, it will be prejudicial to MKC.[2]  MKC will not have adequate time to conduct expert

---

[1] MK Gold was not damaged in any manner with respect to the San Cristobal Project.  Representatives of Apex recently testified in response to a subpoena issued by MK Gold that *70%* of the net revenues from the San Cristobal Project are attributable to nonprecious metals. (A transcript of this deposition is not yet available.)  MK Gold readily admits that Apex is substantially more knowledgeable about the project than MK Gold or any expert hired by MK Gold.  The Noncompete Agreement provides that MKC may freely pursue or participate in any project that is not primarily precious metals.  The San Cristobal Project is clearly primarily a nonprecious metals project.

[2] It would be particularly prejudicial if the revised expert report is materially different from Mr. Brough's prior report.  This is apparently the case.  At the recently completed 30(b)(6) deposition of MK Gold, Tom White testified that MK Gold's "damages" were presently being calculated by MK Gold's expert and were now potentially over $200 million.  Such an amount would be nearly twenty times greater than the amount of actual damages MK Gold has previously claimed in this case.  (A transcript of this deposition is not yet available.)

discovery as well as additional discovery made relevant by any revised report, obtain a rebuttal expert report, and prepare and have heard any motions with respect to MK Gold's purported revised expert report. This is particularly so where the final pretrial conference has been set for March 7, 2001, only a few weeks away.

The court in <u>Perkasie Industries v. Advance Transformer</u>, 143 F.R.D. 73, 77 (E. D. Pa. 1992) addressed this issue and precluded the plaintiff from using new and untimely expert opinions issued on April 1, 1992, when trial in the case was set for June 23, 1992. The court stated that "[t]o impose these added burdens when defendants preparation for the approaching trial will be absorbing all of its time and resources would be unduly prejudicial and patently unfair." <u>Id.</u> at 77. The same result will occur in this case if MK Gold is allowed to submit its new expert opinions at this late date. Trial is approximately six weeks away. MKC's time and resources are being expended in preparation for trial and should not be incurred in expert discovery that should have been completed several months ago.

## II. MK GOLD SHOULD BE PROHIBITED FROM FILING AN EXPERT REPORT ON SAN CRISTOBAL AT THIS LATE DATE.

On November 12, 1998, counsel for MK Gold stated that it would be designating an expert to provide an opinion on whether the San Cristobal Project was primarily a base metals project or a precious metals project. Approximately eight months later on June 14, 1999, MKC received a letter from MK Gold's counsel that included a letter from MK Gold's expert, Stan Dempsey, opining on the San Cristobal Project. Counsel for MKC sent a letter to MK Gold's counsel asking whether Mr. Dempsey would be providing expert testimony on San Cristobal at trial and further requesting that MK Gold's counsel forward all documents relied upon by Mr.

Dempsey in preparing his letter. MK Gold's counsel did not respond to this letter and, to date, has not produced any documents Mr. Dempsey purportedly relied upon in issuing his June 11, 1999 letter.

Although nearly two and a half years have passed since the time MK Gold stated it would designate an expert on San Cristobal and the trial date in this case is rapidly approaching, MK Gold now claims that it has designated another expert on this issue and that this new expert will be issuing an expert opinion on the San Cristobal Project sometime before trial. MK Gold should be barred from doing so. By its own admission, MK Gold has known about the San Cristobal Project for several months. It had an expert issue an opinion letter more than twenty months ago (although MK Gold has still refused to produce relevant documents). Allowing MK Gold to produce a new expert report from a newly designated expert at this late date would be prejudicial to MKC. MKC would not have adequate time to conduct expert discovery, retain a rebuttal expert, file a rebuttal report and related motions prior to trial.

## CONCLUSION

For the foregoing reasons, MK Gold should be prohibited from filing any additional expert reports in this case. MK Gold has had more than adequate time to file all necessary expert opinions. MKC should not be unduly prejudiced by MK Gold's failure to act in a timely manner.

DATED this _11TH_ day of February, 2001.

HATCH, JAMES & DODGE

By: _____

Brent O. Hatch
Mark R. Clements

7

## CERTIFICATE OF SERVICE

I hereby certify that on this _16_ day of February, 2001, I caused a true and correct copy

of the foregoing to be mailed, first-class postage prepaid, to the following:

Alan L. Sullivan
SNELL & WILMER
15 West South Temple #1200
Salt Lake City, UT  84101

David A. Greenwood
VAN COTT, BAGLEY, CORNWALL & MCCARTHY
50 South Main Street, Suite 1600
Salt Lake City, UT  84145

David L. Arrington
DURHAM, JONES & PINEGAR
111 East Broadway, Suite 900
Salt Lake City, UT  84111

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.