Brent O. Hatch (5715)
Mark R. Clements (7172)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666



FILED

16 FEB 01 PM 4:27

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| MK GOLD COMPANY,<br><br>Plaintiff,<br>v.<br><br>MORRISON KNUDSEN CORPORATION, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM OF ROBERT A. TINSTMAN AND STEPHEN G. HANKS IN SUPPORT OF MOTION FOR CLARIFICATION OF RULING OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT** |
| LEUCADIA NATIONAL CORPORATION, a New York corporation,<br><br>Plaintiff,<br>v.<br><br>MORRISON KNUDSEN CORPORATION, a Delaware corporation, ROBERT A. TINSTMAN, an individual, STEPHEN G. HANKS, an individual, and JOHN DOES 1-10, individuals,<br><br>Defendants. | Civil No. 2:96CV00935S<br><br>Civil No. 2:98CV 0327S<br><br>Judge Ted Stewart<br>Magistrate Judge Ronald N. Boyce |



Robert A. Tinstman, and Stephen G. Hanks respectfully submit the following Memorandum in Support of Motion for Clarification of Ruling or Alternatively for Summary Judgment.

## INTRODUCTION

Robert A. Tinstman is the former Chief Executive Officer of Morrison Knudsen Corporation ("MKC"), now known as Washington Group International. Stephen G. Hanks is the current Chief Executive Officer of Washington Group International. Leucadia initially alleged claims of fraud against these gentlemen but has presented absolutely no supporting evidence. Indeed, in their prior Motion for Partial Summary Judgment, Defendants presented the Court with several independent reasons why the claims against Mr. Tinstman and Mr. Hanks should be dismissed. Both in its opposing memorandum and at oral argument, Leucadia presented no opposition to dismissing Mr. Tinstman and Mr. Hanks as parties to the lawsuit and did not come forward with any evidence supporting its claims.

Perhaps because of the numerous other issues before the Court on Summary Judgment, the Court's Ruling did not address Leucadia's neglected claims against Mr. Tinstman and Mr. Hanks. Given the importance of this matter to Mr. Tinstman and Mr. Hanks, the serious nature of the claims of fraud, and believing that their arguments and interests have not been addressed in this case, Mr. Tinstman and Mr. Hanks have specifically requested that a motion be filed on their behalf. As the Tenth Circuit has stated, "a lawsuit containing the serious and stigmatizing allegations of fraud damages the reputation of those accused so long as the lawsuit remains pending." Ehrehaus v. Reynolds, 965 F.2d 916, 921 (1992). This is certainly true in this case.

Mr. Tinstman and Mr. Hanks should not be required to face at trial baseless and unsupported claims of fraud.

Mr. Tinstman and Mr. Hanks reiterate two simple arguments as to why the claims against them should be dismissed – both arguments were set forth in Defendants' prior Memoranda and not addressed by Leucadia with respect to Mr. Tinstman and Mr. Hanks. First, Leucadia has failed to come forward with any admissible evidence of fraud or negligent misrepresentation. The ***only allegations*** against Mr. Tinstman and Mr. Hanks are that at the time of the Stock Purchase Agreement between Leucadia and MKC, Mr. Tinstman and Mr. Hanks held undisclosed opinions that the terms of the 1993 Noncompete Agreement between MKC and MK Gold were unreasonable. As a matter of law, those allegations are insufficient to support claims of fraud or negligent misrepresentation.

Second, Leucadia's claim that Mr. Hanks and Mr. Tinstman violated federal securities law is barred by the applicable one-year statute of limitations. Mr. Hanks sent MK Gold a letter on September 18, 1996 stating that it was MKC's opinion that the Noncompete Agreement was unreasonable. This representation was made over eighteen months prior to the time Leucadia filed its lawsuit against Mr. Tinstman and Mr. Hanks in May of 1998. Leucadia's claims of fraud and negligent misrepresentation against Mr. Tinstman and Mr. Hanks are meritless and should be dismissed.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. In May 1995, MKC and Leucadia entered into a Stock Purchase Agreement through which Leucadia acquired MKC's 46.5% interest in MK Gold Company ("MK Gold").

(Defendants' Memorandum in Support of Motion for Partial Summary Judgment Against Plaintiff Leucadia, ("Def.s' Summ. J. Mem.") Statement of Undisputed Material Facts at ¶ 1.)

2. Mr. Cumming and Mr. Steinberg where the only two officers or employees of Leucadia who participated in the negotiations prior to the parties entering into the Stock Purchase Agreement. (Id. at ¶ 2.)

3. Prior to entering into the Stock Purchase Agreement, neither Mr. Steinberg nor Mr. Cumming ever spoke to anyone at MKC, including Mr. Tinstman and Mr. Hanks, about the Noncompete Agreement. (Id. at ¶ 3.)

4. In fact, Mr. Cumming could not remember having ever spoken to Mr. Hanks prior to this case and could not recall, even generally, anything he had ever discussed with Mr. Tinstman. (Id. at ¶ 4.) Likewise, Mr. Steinberg testified that he might have spoken to either Mr. Hanks or Mr. Tinstman (he could not recall which one) on one occasion, but he could not recall anything about the substance of the conversation. (Id.)

5. The only allegation in Plaintiff's Amended Complaint specifically addressing Mr. Tinstman is that during his deposition in the MKC/MK Gold litigation, he expressed his opinion that the Noncompete Agreement was "not appropriate" and "too broad." (Id. at ¶ 5.) In that same deposition, Mr. Tinstman testified that he did not recall discussing the Noncompete Agreement with anyone during the time the parties were negotiating the Stock Purchase Agreement and that he did not even consider the issue of the enforceability of the Noncompete Agreement until MKC began the process to merge into a company called Washington Construction approximately one year later. (Id.)

4

6. The only allegation in Plaintiff's Amended Complaint specifically addressing Mr. Hanks is that during his deposition in the MKC/MK Gold litigation, he stated that at the time MK Gold first went public, he had "questioned" the legal enforceability of the Noncompete Agreement based on his memory from law school. (Id. at ¶ 6.) Mr. Hanks did not discuss the Noncompete Agreement with anyone during the time Leucadia and MKC were entering into the Stock Purchase Agreement. (Id.)

7. On September 18, 1996, Mr. Hanks sent MK Gold a letter stating that it was MKC's opinion that the Noncompete Agreement was unreasonable and unenforceable. (Leucadia's Complaint at ¶ 83.)

## ARGUMENT

This Memorandum addresses the fraud-based causes of action Leucadia has alleged against Defendants Robert Tinstman and Stephen Hanks: (1) violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule 10b-5; (2) violation of state statutory securities laws; (3) fraud; and (4) negligent misrepresentation. These claims must be dismissed because they are not supported by admissible evidence.

### I. FRAUD CLAIMS SHOULD BE DISMISSED ON SUMMARY JUDGMENT WHERE THEY ARE NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

"An allegation of fraud is a very serious accusation and involves a wrong of such nature that it must be shown by clear and convincing proof and will not lie in mere suspicion or innuendo." In re Mason, 1983 U.S. Dist. Lexis 14593 *7 (Ut. Dist. Ct. 1993) (Judge Winder); see also U.S. v. Thompson, 279 F.2d 165, 167 (10th Cir. 1960) ("An allegation of fraud is a serious matter; it is

never presumed and must be proved by clear and convincing evidence.") This heightened standard of proof must be considered at the summary judgment stage. See Robinson v. Intermountain Health Care, 740 P.2d 262, 264 (Utah Ct. App. 1987) ("In evaluating whether the evidence reveals a genuine issue of material fact..., we must take into consideration the eventual standard of proof, at trial on the merits, on each element of [the] ... claim.").

As set forth below, there is no evidence that Mr. Tinstman or Mr. Hanks engaged in fraud, let alone clear and convincing evidence. Leucadia's fraud claims against Mr. Tinstman and Mr. Hanks must be dismissed.

## II.  LEUCADIA'S FRAUD CLAIMS AGAINST MR. TINSTMAN AND MR. HANKS ARE INSUFFICIENT AS A MATTER OF LAW AND ARE NOT SUPPORTED BY ADMISSIBLE EVIDENCE.

The only allegations against Mr. Tinstman and Mr. Hanks are that at the time of the Stock Purchase Agreement between Leucadia and MKC, Mr. Tinstman and Mr. Hanks held undisclosed opinions that the terms of the 1993 Noncompete Agreement between MKC and MK Gold were unreasonable. (Undisputed Facts at ¶¶ 5, 6.) In Utah Power & Light Co. v. Federal Ins. Co., 983 F.2d 1549, 1556 (1993), the Tenth Circuit held that "opinions about the legal effect of contracts are not [an] adequate basis for actionable fraud." The court continued: "There are two rationales for [this] distinction: (1) it is unreasonable to rely blindly on another's opinion, and (2) no one can be deceived by a misrepresentation of law because everyone has access to the law and may be presumed to know it." Id.

The Tenth Circuit's reasoning is based on long standing and routinely applied law. See Adamson v. Brockbank, 185 P.2d 264, 276 (Utah 1947) (elements of "actionable fraud" include

6

that the "'representation must relate to a past or present matter of fact, not a matter of law, must not be merely promissory, and must not be put forward simply as an expression of opinion'") quoting Black, Rescission of Contracts at p. 172; see also *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 435 (D.N.J. 1998) (statements that can be categorized as "'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations"); Kregos v. Associated Press, 795 F.Supp. 1325, 1334 (S.D.N.Y. 1992) (dismissing claim of fraud with finding that plaintiff "had no reasonable right as a matter of law to rely upon legal opinions" offered by entity in adversarial position); Iowa v. Tyler, 512 N.W.2d 552, 555 (Iowa 1994) ("Representations or statements concerning domestic law normally are not regarded as representations of fact and therefore no action for fraud arises even when they are false."); *Zimmerman v. Kent*, 575 N.E.2d 70, 75 (Mass Ct. App. 1991) ("statement on which liability for misrepresentation may be based must be one of fact, not of expectation, estimate, opinion, or judgment."; *Continental Potash v. Freeport-McMoran, Inc.*, 858 P.2d 66, 79 (N.M. 1993) ("[f]raud cannot be predicated upon the expression of an opinion").

Leucadia alleges that during his deposition in the MK Gold/MKC case, Mr. Tinstman stated that his opinion that the Noncompete Agreement was "not appropriate" and "too broad." (Am. Compl. at ¶ 101.) Similarly, Leucadia alleges that Mr. Hanks, during his deposition in the MKC/MK Gold litigation, stated that at the time of the IPO he had "questioned" the enforceability of the Noncompete Agreement based on what he recalled learning in law school. (Am. Compl. at ¶ 99.) These are the *only* allegations of fraud against either Mr. Tinstman or Mr. Hanks. ***Indeed, neither Mr. Tinstman nor Mr. Hanks ever discussed the Noncompete***

7

***Agreement in any manner with any representative of Leucadia.*** (Undisputed Facts at ¶¶ 3, 4.) In fact, Mr. Cumming and Mr. Steinberg, the only representatives who might have spoken with a representative of MKC prior to the transaction at issue, could not recall, even generally, the substance of ***any conversations*** either of them had with Mr. Tinstman or Mr. Hanks prior to filing this lawsuit. (Id.)[1]

The alleged undisclosed opinions of Mr. Tinstman and Mr. Hanks about the enforceability of the Noncompete Agreement obviously are not statements of fact that can form the basis of fraud claims. Leucadia was a sophisticated party represented by competent counsel and could determine the legality of the Noncompete Agreement on its own. As the Tenth Circuit stated, a party in Leucadia's position is "presumed to know" the law and is not justified in relying on the opinion (much less an undisclosed opinion) of another. Utah Power & Light Co., 983 F.2d at 1556.

Moreover, even incorrectly assuming that undisclosed legal opinions could somehow form the basis of a fraud claim, there is no evidence that Mr. Tinstman or Mr. Hanks owed any duty to Leucadia to disclose personal opinions and beliefs about the enforceability of the Noncompete Agreement. Indeed, MKC and Leucadia were on opposite sides of the bargaining table. The absence of any evidence of a duty to disclose is also fatal to Leucadia's fraud claims. See Gold Standard, Inc., v. Getty Oil Co., 915 P.2d 1060, 1064 (Utah 1996) (holding that no duty exists "[w]hen the parties deal 'at arm's length' or in any adversarial relationship") quoting

---

[1] Amazingly, even though they alleged fraud claims against him, Mr. Steinberg and Mr. Cumming could not recall if they had ever even spoken to Mr. Hanks prior to filing this lawsuit. (Undisputed Facts at ¶ 4.)

8

Van Hake v. Thomas, 705 P.2d 766, 769 (Utah 1985). Leucadia's fraud-based claims against Mr. Tinstman and Mr. Hanks must be dismissed.

### III. LEUCADIA'S FEDERAL FRAUD CLAIM AGAINST MR. TINSTMAN AND MR. HANKS IS BARRED BY THE APPLICABLE ONE-YEAR STATUTE OF LIMITATIONS.

Leucadia's claim that Mr. Hanks and Mr. Tinstman violated federal securities law is barred by the applicable one-year statute of limitations. Federal securities fraud claims premised on Section 10(b) and Rule 10b-5 "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." Lampf v. Gilbertson, 501 U.S. 350, 364 (1991).[2] The one year period begins when the alleged violations are, or through the exercise of reasonable diligence should have been, discovered. Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1255 (10th Cir. 1997); Menowitz v. Brown, 991 F.2d 36, 41 (2nd Cir. 1993) (one year period begins when plaintiff has actual or "inquiry notice" of the alleged violations).

Mr. Hanks sent MK Gold a letter on September 18, 1996 stating that it was MKC's opinion that the Noncompete Agreement was unreasonable and unenforceable. In answering MK Gold's Complaint on November 22, 1996, MKC alleged as its sixth affirmative defense that the Noncompete Agreement was "unreasonably broad in its terms and in the scope of the competition it purports to restrict." (MKC's Answer at p. 13.) These representations were made

---

[2] To the extent Leucadia's federal securities fraud claim against Mr. Tinstman and Mr. Hanks is based on representations made in MK Gold's 1993 Prospectus or other publicly filed documents of MK Gold or MKC from this time period touting the existence of the Noncompete Agreement, the claims must be dismissed under the applicable three year statute of repose. Leucadia did not file its Complaint until more than four years after those disclosures were made. (See Compl. dated May of 1998.)

9

over eighteen months prior to the time Leucadia filed its lawsuit against Mr. Tinstman and Mr. Hanks in May of 1998 based on these gentlemen's alleged undisclosed opinions that the Noncompete Agreement was unreasonable broad – legal opinions disclosed in response to questions posed by the same attorneys who subsequently filed suit on behalf of Leucadia.

Leucadia was clearly aware of MKC's opinion that the Noncompete Agreement was unreasonable more than one year prior to the time it filed its lawsuit against Mr. Tinstman and Mr. Hanks for expressing the same opinions. Leucadia's fraud claims against Mr. Tinstman and Mr. Hanks are barred by the applicable one-year statute of limitations.

## IV. LEUCADIA'S NEGLIGENT MISREPRESENTION CLAIM AGAINST MR. TINSTMAN AND MR. HANKS MUST ALSO BE DISMISSED.

Leucadia has not alleged that Mr. Tinstman or Mr. Hanks made any negligent misrepresentations in this case. In fact, Leucadia has admitted that Mr. Tinstman and Mr. Hanks made no representations to Leucadia whatsoever regarding the Noncompete Agreement at the time the parties entered into the Stock Purchase Agreement. (Undisputed Facts at ¶¶ 3-6.) Again the only allegations Leucadia makes are that Mr. Tinstman and Mr. Hanks held undisclosed legal opinions that the Noncompete Agreement was unreasonable. For the reasons set forth above, such allegations are insufficient as a matter of law.

Moreover, to the extent Leucadia's negligent misrepresentation claim is based on the alleged nondisclosure of opinions about the Noncompete Agreement, which is the only possible (albeit nonsensical) argument Leucadia could make, the claim must further be dismissed because Mr. Hanks and Mr. Tinstman did not owe any duty of disclosure to Leucadia. See Ellis v. Provident Life & Accident Ins. Co., 3 F.Supp.2d 399, 411 (S.D.N.Y. 1998) (to establish a claim

for negligent misrepresentation, plaintiff "is required to show that defendant had a duty, based upon some special relationship with the plaintiff, to impart correct information" and gave false or incorrect information). The law of negligent misrepresentation "recognizes that generally there is no liability for words negligently spoken but that there is an exception when the parties' relationship suggests a closer degree of trust and reliance than that of the ordinary buyer and seller." American Protein Corp. v. AB Volvo, 844 F.2d 56, 63 (2nd Cir. 1988) (citation and internal quotation marks omitted), cert. denied, 488 U.S. 852 (1988). The relationship between Leucadia and MKC was that of buyer and seller – nothing more. Leucadia's negligent misrepresentation claim against Mr. Tinstman and Mr. Hanks must be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Tinstman's and Mr. Hanks' Motion for Clarification of Ruling or Alternatively for Summary Judgment should be granted and Leucadia's claims against these gentlemen should be dismissed.

DATED this 16TH day of February, 2001.

HATCH, JAMES & DODGE

By: _____
Brent O. Hatch
Mark R. Clements

## CERTIFICATE OF SERVICE

I hereby certify that on this  1 6  day of February, 2001, I caused a true and correct copy of the foregoing to be mailed, first-class postage prepaid, to the following:

Alan L. Sullivan
SNELL & WILMER
15 West South Temple #1200
Salt Lake City, UT  84101

David A. Greenwood
VAN COTT, BAGLEY, CORNWALL & MCCARTHY
50 South Main Street, Suite 1600
Salt Lake City, UT  84145

David L. Arrington
DURHAM, JONES & PINEGAR
111 East Broadway, Suite 900
Salt Lake City, UT  84111

*Constance Hodgson*