FILED

20 FEB 01 AM 9:22

Brent O. Hatch (5715)
Mark R. Clements (7172)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MK GOLD COMPANY,<br><br>Plaintiff,<br>v.<br><br>MORRISON KNUDSEN CORPORATION,<br>a Delaware corporation,<br><br>Defendant. | **DEFENDANT MORRISON KNUDSEN CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT REGARDING THE SAN CRISTOBAL PROJECT** |
| LEUCADIA NATIONAL CORPORATION,<br>a New York corporation,<br>Plaintiff,<br>v.<br>MORRISON KNUDSEN CORPORATION,<br>a Delaware corporation, ROBERT A.<br>TINSTMAN, an individual, STEPHEN G.<br>HANKS, an individual, and JOHN DOES<br>1-10, individuals,<br>Defendants. | Civil No. 2:96CV00935S<br><br>Civil No. 2:98CV 0327S<br><br>Judge Ted Stewart<br><br>Magistrate Judge Ronald N. Boyce |



Defendant Morrison Knudsen Corporation ("MKC") now known as Washington Group International ("Washington"), respectfully submits this Memorandum in Support of Motion for Summary Judgment Regarding the San Cristobal Project.

## INTRODUCTION

The San Cristobal Project is primarily and substantially a nonprecious metals mining project. Reserve projections show that in terms of quantity produced, the project will result in the production of many, many times more nonprecious metals (4 million *tons* of zinc and 1.4 million *tons* of lead) than precious metals (470 million *ounces* of silver). Apex, the project's owner, recently testified in response to a deposition subpoena issued by MK Gold that approximately ***70% of the net revenues from the San Cristobal Project will result from zinc and lead***.

Despite undisputed actual numbers for the project, MK Gold continues to rely solely on press releases which state that the San Cristobal Project will be one of the largest producers of silver as apparent evidence that the project should be considered a precious metals project for purposes of the Noncompete Agreement. Those press releases, however, do not address the relevant issue, which is whether the project will primarily result in the production of precious metals or nonprecious metals. The only evidence on that issue is the actual numbers showing reserves and revenues and those actual numbers demonstrate that the San Cristobal Project is primarily and overwhelmingly a nonprecious metals mining project.

The 1993 Noncompete Agreement between MK Gold and Washington provides that Washington may pursue any project that will not primarily result in the production of precious

2

metals. Washington's pursuit of the San Cristobal Project is clearly not a breach of the Noncompete Agreement, and Washington's counterclaim for a declaratory judgment on this issue should be granted.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. The 1993 Noncompete Agreement provides that Washington will not engage in the business of mining precious metals (gold, silver, and platinum) for a period of ten years. (Exh. A, Noncompete Agreement at §2.1.) The Noncompete Agreement places no restrictions on Washington's pursuit of any project that is not primarily a precious metals mining project.

2. Section 2.2 of the Noncompete Agreement provides the procedure for how a mining project that contains both nonprecious metals and precious metals should be handled under the Noncompete Agreement:

> Exceptions.   Morrison Knudsen and its Affiliates shall not be precluded by this Agreement from ... (f) engaging in any activity with respect to a mine or project that, based upon (i) the reasonable belief of Morrison Knudsen after due inquiry and (ii) a written report of an independent professional expert in mining or geology, is expected over the life of the mine or project not to be primarily engaged in the mining of or not primarily result in the production of Precious Metals.

(Id. at §2.2.)

3. Prior to submitting its initial bid on the San Cristobal Project in February 1999, Washington conducted a due inquiry regarding the materials to be produced from the San Cristobal Project and determined that the San Cristobal Project would not primarily result in the mining and production of precious metals. (Exh. B, First Affidavit of LeRoy Wilkes dated July 6, 1999 ("Wilkes First Aff.") at ¶ 3.)

3

4. Prior to submitting its initial bid on the San Cristobal Project, Washington obtained a written report of an independent professional expert in mining or geology, Doug Silver, in December 1998. Mr. Silver's report concluded that the San Cristobal Project would not primarily result in the mining and production of precious metals. (Id. at Exhibit 1, Independent Report of Doug Silver dated December 1998.)

5. In March 1999, Apex notified Washington that Washington's February 1999 bid to perform mining services at the San Cristobal Project was unsuccessful. (Exh. C, Second Affidavit of LeRoy Wilkes, dated November 21, 2000 ("Wilkes Second Aff.") at ¶ 4.)

6. In the latter part of 1999, Apex informed Washington that the San Cristobal Project would be rebid. Prior to submitting a new bid, Washington once again conducted a due inquiry to determine the primary materials to be produced from the San Cristobal Project. Pursuant to this second inquiry, Washington determined that the San Cristobal Project would not primarily result in the production of precious metals, but that approximately 70% of the revenues from the project would result from zinc and lead. (Id. at ¶ 5.)

7. Prior to Washington submitting its second bid, Apex gave Washington an independent report on the San Cristobal Project, dated November 25, 1999, prepared by Deutsche Bank Securities, Inc. ("Deutsche"), an entity appointed by Apex as a Lead Arranger of financing on the San Cristobal Project. A true and correct copy of this report is attached as Exhibit "A" to Mr. Wilkes Second Affidavit. On page twelve of this report, Deutsche states that "approximately 70% of the net revenues" from the San Cristobal Project "comes from base [i.e.

4

nonprecious] metals." Deutsche states that Apex, based on the economic terms of the San Cristobal Project, "is very much a base metal company." (Id. at Exh. A.)

8. Washington submitted its second bid on the San Cristobal Project in February 2000 and was subsequently awarded the bid. (Id. at ¶ 7.) As of this time, Washington has not engaged in any contract mining at the San Cristobal Project.

9. At the February 8, 2001, 30(b)(6) deposition of Apex conducted pursuant to a subpoena issued by MK Gold, Apex's President, Keith Hulley, and Chief Financial Officer, Mark Lettes, testified that 70% of the net revenues from the San Cristobal Project would come from zinc and lead. (Copies of the transcripts from Mr. Hulley's and Mr. Lettes' depositions are not yet available.)

## **ARGUMENT**

Section 2.2 was included in the Noncompete Agreement to address the issue of how a mining project that contained both nonprecious metals and precious metals would be handled. MKC complied with the requirements of section 2.2 in submitting its bids on the San Cristobal Project. MKC's due inquiry and the independent report of Doug Silver both concluded that the San Cristobal Project would primarily result in the mining and production of nonprecious metals. Apex, the owner of the project and the party with the most knowledge regarding the project, has testified that *70%* of the net revenues from the project will come from nonprecious metals. Summary Judgment should be granted in MKC's favor on its request for declaratory judgment that its pursuit of the San Cristobal Project is not a breach of the Noncompete Agreement.

## I. MKC COMPLIED WITH SECTION 2.2 OF THE NONCOMPETE AGREEMENT IN PURSUING THE SAN CRISTOBAL PROJECT.

MKC complied with the specific terms of section 2.2 of the Noncompete Agreement in submitting its bids on the San Cristobal Project. MKC's due inquiry and the independent report from Mr. Silver both concluded that the San Cristobal Project is expected over the life of the project "not to be primarily engaged in the mining of or not primarily result in the production of Precious Metals."

## II. SAN CRISTOBAL IS PRIMARILY AND OVERWHELMINGLY A NONPRECIOUS METALS MINING PROJECT.

San Cristobal is primarily a nonprecious metals mining project. Apex, the owner of the San Cristobal Project, has spent millions of dollars studying, testing, and evaluating the project and obviously knows more about the project than anyone else. Apex's President, Keith Hulley and its Chief Financial Officer, Mark Lettes, both recently testified, in response to a subpoena issued by MK Gold, that, based on net revenues, the San Cristobal Project is very much a nonprecious metals project with approximately 70% of the project's net revenues (and a substantially greater percentage by quantity of metal) attributable to zinc and lead.

## CONCLUSION

MKC's pursuit of the San Cristobal Project is not a breach of the Noncompete Agreement. MKC complied with section 2.2 of the Noncompete Agreement in pursuing the project by conducting a due inquiry and commissioning an independent expert report – both of which concluded that the San Cristobal Project would not primarily result in the production of precious metals. Moreover, the San Cristobal Project is clearly a nonprecious metals mining

project. Apex, the owner of the project, recently testified that 70% of the net revenues from the project would result from nonprecious metals. MKC's counterclaim for a declaratory judgment that its pursuit of the San Cristobal Project is not a breach of the Noncompete Agreement should be granted.

DATED this 19TH day of February, 2001.

HATCH, JAMES & DODGE

By: _/s/ Mark R. Clements_
Brent O. Hatch
Mark R. Clements

## CERTIFICATE OF SERVICE

I hereby certify that on this 19TH day of February, 2001, I caused a true and correct copy of the foregoing to be delivered to the following in the manner indicated:

| | |
|---|---|
| Alan L. Sullivan<br>SNELL & WILMER<br>15 West South Temple, Suite 1200<br>Gateway Tower West<br>Salt Lake City, UT 84101 | (First class mail) |
| David A. Greenwood<br>VAN COTT, BAGLEY, CORNWALL & MCCARTHY<br>50 South Main Street, Suite 1600<br>Salt Lake City, UT 84145 | (Hand delivery) |
| David L. Arrington<br>DURHAM, JONES & PINEGAR<br>111 East Broadway, Suite 900<br>Salt Lake City, UT 84111 | (First class mail) |

_/s/ Mark Cx_

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.