VAN COTT, BAGLEY, CORNWALL & McCARTHY
David A. Greenwood (1250)
Stephen K. Christiansen (6512)
50 South Main Street, Suite 1600
Post Office Box 45340
Salt Lake City, Utah 84145-0340
Telephone: (801) 532-3333
Facsimile: (801) 534-0058

DURHAM, JONES & PINEGAR
David L. Arrington (4267)
111 East Broadway #900
Salt Lake City, Utah 84111
Telephone: (801) 538-2424
Facsimile: (801) 538-2425

Attorneys for Plaintiff MK Gold Company

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MK GOLD COMPANY, a Delaware corporation,<br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MORRISON KNUDSEN CORPORATION, a<br>Delaware corporation,<br>　　　　　　　　　　　Defendant. | **PLAINTIFF MK GOLD'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PROHIBIT PLAINTIFF MK GOLD FROM FILING ADDITIONAL EXPERT REPORTS** |
| LEUCADIA NATIONAL CORPORATION, a<br>New York corporation,<br>　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>MORRISON KNUDSEN CORPORATION, a<br>Delaware corporation, ROBERT A. TINSTMAN,<br>an individual, STEPHEN G. HANKS, an<br>individual, and JOHN DOES 1-10, individuals,<br>　　　　　　　　　　　Defendants. | Civil No. 2:96-CV-935 ST<br>Civil No. 2:98-CV-327 ST<br><br>Judge Ted Stewart<br><br>Magistrate Judge Ronald Boyce |

277:224400v1



Plaintiff MK Gold Company, through counsel, respectfully submits this Memorandum in Opposition to Defendants' Motion to Prohibit Plaintiff MK Gold From Filing Additional Expert Reports.

## INTRODUCTION

When MK Gold learned, in September, 2000 that Morrison Knudsen had been awarded the mining contract at San Cristobal, it immediately undertook efforts to conduct discovery regarding that project. Pursuant to a stipulation between counsel, the parties agreed that MK Gold and Morrison Knudsen could conduct discovery limited to the San Cristobal project. In connection with that stipulation, the parties also agreed that "MK Gold may identify additional expert witnesses on the San Cristobal issue." After the stipulation was signed, MK Gold sent subpoenas to third parties, including the owner of San Cristobal, and requested that Morrison Knudsen supplement its prior discovery responses to include information about San Cristobal. Rather than cooperate to speed discovery along, Morrison Knudsen repeatedly thwarted MK Gold's good faith efforts. MK Gold discovery regarding San Cristobal included a subpoena *duces tecum* to Apex Silver regarding San Cristobal and depositions of Apex representatives on February 8, 200. Less than two weeks later, MK Gold filed an expert report of Frank McAllister concluding that San Cristobal is very much a precious metals mine.

Now, Morrison Knudsen is asking this Court to preclude MK Gold from filing that report because, in Morrison Knudsen's words, "MK Gold could have and should have filed its expert reports several months ago." That statement is both unsupported and unsupportable. MK Gold did not know, and could not have known, until September 13,

2

277:224400v1

2000 that Morrison Knudsen had been awarded the mining contract at San Cristobal. The information MK Gold obtained through discovery conducted between November, 2000 and February, 2001 was information MK Gold needed to secure a complete and credible expert opinion. Frank McAllister attended the document production by Apex Silver and attended the depositions of Apex Silver representatives to speed the process along as fast as possible. He also attended the deposition of Doug Silver, Morrison Knudsen's San Cristobal expert. The response by Apex Silver to the subpoena and Apex Silver depositions was delayed because Morrison Knudsen filed a Motion to Quash (which it later withdrew) and MK Gold was forced to file a Motion to Compel (which was successful) to obtain Morrison Knudsen documents relating to San Cristobal. Because MK Gold filed its expert report less than two weeks after that discovery was completed, there is no basis for excluding Mr. McAllister's report.

Additionally, MK Gold has filed an updated expert report of John Brough, MK Gold's damages expert. That report has been updated to include damages arising out of Morrison Knudsen's involvement in the San Cristobal project. Mr. Brough has simply reduced Morrison Knudsen's San Cristobal profits to present value. He has also added prejudgment interest to Morrison Knudsen's Bullfrog profits and updated his calculation of Goodwill damages. Again, because MK Gold only recently learned that Morrison Knudsen had been awarded the San Cristobal project, and has even more recently completed court-authorized and Morrison Knudsen stipulated discovery on the San Cristobal project, MK Gold could not have produced an updated expert report any earlier. Mr. Brough's Goodwill calculations must be current, and he must therefore update them

close to trial. Accordingly, there is no reason to preclude MK Gold from filing Mr. Brough's amended expert report and Morrison Knudsen's motion should be denied.

## STATEMENT OF FACTS

1. On September 13, 2000, Apex Silver Mines Limited issued a press release announcing that Washington Group International, formerly Morrison Knudsen, had been named "mining contractor for San Cristobal, the Company's open-pit silver-zinc mining project in southern Bolivia." "Washington Group International Named Mining Contractor for San Cristobal," Company News On-Call Press Release, Sep. 13, 2000 (attached hereto as Exhibit "A").

2. On October 12, 2000, MK Gold sought leave of court to conduct discovery limited to the San Cristobal project. On or about November 3, 2000, counsel for MK Gold and counsel for Morrison Knudsen agreed to the terms of a joint stipulation that authorized "discovery solely on the issue of the Apex San Cristobal project." Stipulation and Joint Motion, Nov. 3, 2000.

3. Additionally, counsel for the respective parties agreed that "**MK Gold may identify additional expert witnesses on the San Cristobal issue**, who will of course be subject to deposition." Letter from Stephen Christiansen to Mark Clements, Nov. 3, 2000 (attached hereto as Exhibit "B") (emphasis added). On November 9, 2000, the court approved the parties' stipulated motion.

4. On November 15, 2000, MK Gold sent a letter to counsel for Morrison Knudsen requesting that Morrison Knudsen, consistent with its duty to supplement prior discovery responses, produce all materials in its possession regarding the San Cristobal

4

277:224400v1

project. *See* Letter from Stephen Christiansen to Mark Clements, Nov. 15, 2000 (attached hereto as Exhibit "C").

5. On November 28, 2000, Morrison Knudsen served upon counsel for MK Gold its responses to MK Gold's discovery requests, but refused to provide certain critical financial information regarding Morrison Knudsen's bid. The bottom line was that Morrison Knudsen refused to produce information of Morrison Knudsen's profits which was one of the critical reasons for the discovery in the first place.

6. On December 7, 2000, MK Gold filed a motion to compel production of the information Morrison Knudsen had redacted from its discovery responses. Morrison Knudsen resisted MK Gold's motion and filed a motion for protective order. On January 10, 2001, this Court granted MK Gold's motion, denied Morrison Knudsen's motion for protective order, and ordered Morrison Knudsen to produce the redacted information.

7. On November 15, 2000, MK Gold served a Subpoena Duces Tecum on Apex Silver Mines Limited seeking materials relating to the San Cristobal Project. On November 27, 2000, Morrison Knudsen filed a motion to quash the Apex subpoena. Apex itself never joined in Morrison Knudsen's motion, and that motion was mooted on December 8, 2000, when Apex Silver produced documents responsive to the subpoena.

8. On January 5, 2001, Apex Silver produced extensive documents in Denver, Colorado responsive to MK Gold's subpoena. Mr. McAllister reviewed these documents as they were produced to enable him to prepare an expert report as rapidly as possible. Mr. McAllister also attended the depositions of Apex Silver held in Denver on February 8 so he would not have to wait for their transcription to prepare his report.

277:224400v1

9. On January 18, 2001, counsel for MK Gold informed counsel for Morrison Knudsen that MK Gold intended to call Frank McAllister as an expert witness on the issue of whether the San Cristobal project is a precious metals project. Counsel for MK Gold also informed counsel for Morrison Knudsen that an expert report would "be provided once [MK Gold has] completed discovery from Apex Silver and Salomon Smith Barney." Letter from Stephen Christiansen to Mark Clements, Jan. 18, 2001 (attached hereto as Exhibit "D").

10. At no time following its receipt of Mr. Christiansen's January 18 letter did counsel for Morrison Knudsen object to MK Gold's plan to submit an expert report after discovery from Apex Silver was completed.

11. On February 8, 2001, MK Gold deposed Apex Silver in Denver, Colorado, thus completing discovery from Apex Silver.

12. Morrison Knudsen also took discovery regarding San Cristobal. It took the deposition of Tom White which concluded February 12. MK Gold did not object to that deposition being taken after the expiration of the time in the stipulation. Morrison Knudsen has also asked for the deposition of Rick Riccard regarding San Cristobal, and MK Gold will provide Mr. Riccard.

13. On February 20, 2001, MK Gold filed an expert report of Frank McAllister concluding that the San Cristobal project is a precious metals project. Mr. McAllister's report is attached hereto as Exhibit "E." Mr. McAllister filed his report one business day after counsel for MK Gold received the Motion to Exclude Expert Reports. Mr. McAllister has also provided deposition dates.

14. Trial in this case is set for April 2, 2001. Plenty of time exists for a deposition of Mr. McAllister prior to the commencement of trial.

15. On February 26, 2001, John Brough filed his supplemental expert report. In that report Mr. Brough reduces Morrison Knudsen's San Cristobal profits to present value. Obviously, Mr. Brough cannot reduce Morrison Knudsen's San Cristobal profits to present value until he knows what they are. Mr. Brough also adds prejudgment interest to Morrison Knudsen's profits on Bullfrog. He also brings his Goodwill calculations current. Mr. Brough's supplemental report is attached hereto as Exhibit "F."

## DISCUSSION

I. Morrison Knudsen's Motion is Improper Because the Motion is Not Accompanied by a Certification that Morrison Knudsen in Good Faith Conferred with Counsel for MK Gold.

Morrison Knudsen's Motion should be denied because Morrison Knudsen failed to file a certification that it "met and conferred" with counsel for MK Gold before filing its Motion. Morrison Knudsen's Motion is, in essence, a motion for sanctions for MK Gold's alleged failure to make a disclosure required by Federal Rule of Civil Procedure 26(a). See Fed.R.Civ.P. 26(a)(2)(B) (requiring disclosure of expert reports). Federal Rule of Civil Procedure 37(a)(2)(A) requires that any such motion "must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure without court action." Morrison Knudsen made no such certification in connection with its Motion. More importantly, Morrison Knudsen made no effort to resolve the issues identified in the Motion without involving the court. Morrison Knudsen's Motion is therefore untimely and improper, and should be denied.

7

277:224400v1

II.  Morrison Knudsen's Motion Should be Denied Because MK Gold Has Not Unreasonably Delayed in Filing its Expert Reports.

Even if the Court chooses to reach the merits of Morrison Knudsen's Motion, the Motion should be denied. Citing no rule of civil procedure, no court order and no binding authority, Morrison Knudsen argues that this Court should prohibit MK Gold from filing Frank McAllister's expert report and an amended report of John Brough. Rather than citing any governing legal principle, Morrison Knudsen argues that MK Gold has delayed too long in presenting its expert reports. Morrison Knudsen tells the Court it would be unduly prejudiced if MK Gold is allowed to file Mr. McAllister's report because "it would take at least three months to complete expert discovery, and that is based on the assumption that MK Gold would completely cooperate in discovery." This is nonsense. Mr. McAllister is available for deposition soon. It does not take three months to depose one expert.

Morrison Knudsen substantially delayed the San Cristobal discovery so now cannot complain when Mr. McAllister filed his expert report shortly after the Apex depositions. First, Morrison Knudsen filed a motion to quash the Apex subpoena despite the fact that Apex itself had been cooperating with counsel for MK Gold to produce responsive documents. That motion was ultimately rendered moot when Apex produced documents to MK Gold. Next, Morrison Knudsen refused to produce materials responsive to MK Gold's discovery requests. MK Gold had no choice but to file a motion to compel production of the withheld materials, which the Court ultimately granted.

MK Gold did everything it could to shorten the process. Mr. McAllister attended the Apex Silver depositions so he would not have to wait for them to be transcribed to

8

prepare his report. Moreover, Morrison Knudsen completely ignores the fact that, in November, 2000 it stipulated that "MK Gold may identify additional expert witnesses on the San Cristobal issue." Facts ¶ 3. MK Gold stands ready to honor *its* commitment to make Mr. McAllister available for deposition at a mutually convenient time and place.

Apparently Morrison Knudsen is unwilling to stand by the commitment *it* made, and from which it received substantial benefits of its own. For example, the parties stipulated that Morrison Knudsen would have until February 15, 2001 to file a motion for summary judgment on issues relating to San Cristobal, a motion that Morrison Knudsen in fact filed. However, Morrison Knudsen did not file its Motion for Summary Judgment until February 19, 2001, four days after the stipulated cut-off date. Counsel for Morrison Knudsen phoned counsel for MK Gold on February 15, 2001 to request an extension of the dispositive motion deadline. Counsel for MK Gold, who was not informed that Morrison Knudsen was simultaneously preparing its Motion to Prohibit MK Gold from Filing Additional Expert Reports, granted the extension as a matter of professional courtesy. Thus, although Morrison Knudsen has eagerly accepted the benefits of its stipulation with MK Gold, Morrison Knudsen now refuses to accept any of that stipulation's reciprocal responsibilities.

Morrison Knudsen also argues that MK Gold should have prepared an expert report regarding San Cristobal some two and a half years ago, when MK Gold was first aware that Morrison Knudsen was pursuing the San Cristobal project. However, it is undisputed that until September 13, 2000, MK Gold did not know and could not have known that Morrison Knudsen was awarded the mining contract at San Cristobal. Any expert report would therefore have been premature prior to September, 2000. To suggest

that MK Gold should have undertaken the time and expense to procure expert reports on every project Morrison Knudsen pursued or expressed interest in since the signing of the noncompete agreement is absurd, and MK Gold was under no obligation to do so. MK Gold therefore could not have filed Mr. McAllister's expert report any earlier than it did. That is why Morrison Knudsen agreed in November, 2000 that MK Gold could designate experts on San Cristobal.

Morrison Knudsen cannot demonstrate any prejudice that would flow from allowing MK Gold to file its expert reports. Morrison Knudsen's suggestion that it has inadequate time to "retain a rebuttal expert and have him prepare a rebuttal report" is specious. Morrison Knudsen has an expert, Doug Silver, who was deposed on January 26, 2001. Mr. Silver presented at that time a cost calculation on San Cristobal which he had done the day before his deposition. Mr. Silver is Morrison Knudsen's expert and presumably he will respond to Mr. McAllister. In its motion for summary judgment, Morrison Knudsen makes much of the fact that it retained Mr. Silver who opined in 1998, 1999 and in December, 2000 that the San Cristobal project is not a precious metals project. Morrison Knudsen does not explain to the Court why a person qualified to give such an opinion in the first instance could not adequately rebut the testimony of MK Gold's expert.

In fact, Mr. McAllister's expert report simply challenges and rebuts the assumptions and conclusions in Mr. Silver's expert report. Mr. Silver opined in his report that San Cristobal is not a precious metals mine based on annual production rates and mineral value based on recoverable metals. Although Mr. Silver did not initially perform a net smelter return analysis, nor did he apparently consider such an analysis to

277:224400v1

be relevant, he eventually did so in preparation for his deposition. However, Mr. Silver did not disclose his net smelter return calculation until the day of his deposition, January 26, 2001. Mr. McAllister, in his report, directly challenges Mr. Silver's calculations because "they fail to consider the economics implicit in a basic calculation of NSR [Net Smelter Returns]." McAllister Report at 12. Mr. McAllister concludes that a net smelter return that takes into account true project economics is the proper calculation for determining whether a mine is primarily precious metals, and that the result of such a calculation reveals that San Cristobal is unquestionably a silver mine. Mr. McAllister also points out the apparent contradiction between Mr. Silver's support for "the method of considering the perspective of the mine owner" in determining whether a project is primarily precious metals and his conclusion that San Cristobal is primarily a zinc mine, given that Apex Silver has consistently characterized San Cristobal as a silver mine. Because Mr. McAllister's expert report challenges and responds to Mr. Silver's report, there is simply no reason why Morrison Knudsen cannot use Mr. Silver to rebut Mr. McAllister's expert testimony.[1]

The only case Morrison Knudsen cites in support of its motion, *Perkasie Industries Corp. v. Advance Transformer, Inc.*, 143 F.R.D. 73 (E.D.Pa. 1992), is inapposite for several reasons. First, the plaintiff in that case sought to add *three* new expert witnesses over defendant's objection. Here, MK Gold has only added one additional expert, and Morrison Knudsen stipulated that MK Gold may add such an expert. Second, in the *Perkasie* case the identities and existence of the experts had not previously been disclosed to the defendant. In fact, the plaintiff there "never expressed

---

[1] Indeed, if a party is entitled to appoint a new expert to rebut the testimony of one who is, himself, a rebuttal expert, the result would be an endless parade of "rebuttal" experts on each side of the litigation.

11

an intention to submit expert reports other than those" previously submitted. *Id.* at 76. Here, Morrison Knudsen has known for months that MK Gold would retain an expert to testify regarding the nature of the San Cristobal mine, and has known since at least January 18, 2001, that the expert would be Frank McAllister.

Third, Morrison Knudsen's attempt to analogize the burdens it would bear if MK Gold is allowed to present its expert report to the burdens on the defendant in *Perkasie* is fundamentally flawed. When the *Perkasie* court found that the defendant would be "unreasonably burdened" by the addition of plaintiff's experts, it was most concerned with the burdens associated with deposing *three* new witnesses and with defendant's need to "realign its defense strategy accordingly." *Id.* at 77. Here, Morrison Knudsen's defense strategy with respect to the San Cristobal project has been clear and consistent: Morrison Knudsen argues that the San Cristobal mine is not a precious metals mine. Morrison Knudsen has already retained an expert to testify that San Cristobal is not a precious metals mine. In fact, Morrison Knudsen has already filed a motion for summary judgment on this precise issue. Morrison Knudsen is not in a position where it will have to "realign its defense strategy," it will simply argue what it has argued, repeatedly, all along. Now, it will simply have to contend with an expert opinion that states what Apex itself has said for years: San Cristobal is a silver mine.

In stark contrast to Morrison Knudsen, MK Gold will suffer substantial harm if it is not allowed to file an expert report regarding the San Cristobal project. The Court has already ruled that MK Gold's damages arising out of the San Cristobal project must go to the jury. If MK Gold is precluded from calling an expert who will testify that San Cristobal is a precious metals project, while Morrison Knudsen is allowed to call an

12

277:224400v1

expert who will say the opposite, MK Gold will suffer extreme prejudice that is likely to be outcome determinative.

Finally, the *Perkasie* court was particularly concerned about "the conspicuous absence of an explanation by [plaintiff] for its failure to comply with the court's December 23rd order." *Id.* at 76. No court order is violated here. Moreover, as discussed in detail above, MK Gold has a perfectly reasonable explanation for not filing Mr. McAllister's report or Mr. Brough's amended report earlier. Specifically, Morrison Knudsen was not awarded the San Cristobal project until September, 2000, and MK Gold did not have access to highly relevant materials until the last several months. Once MK Gold learned Morrison Knudsen had been awarded the mining contract at San Cristobal it diligently pursued discovery on all relevant matters and yet was repeatedly delayed in doing so by Morrison Knudsen itself. Under the circumstances, MK Gold cannot be said to have unreasonably delayed in filing Mr. McAllister's report and there is thus no reason to preclude MK Gold from filing that report.

Likewise, because John Brough's amended damages report will incorporate damages arising out of Morrison Knudsen's participation in San Cristobal, the amended report could not have been completed any earlier. Information critical to Mr. Brough's damages calculations was not in MK Gold's possession until discovery regarding San Cristobal, discovery to which Morrison Knudsen itself stipulated, was complete. All Mr. Brough is going to do is reduce Morrison Knudsen's profits on San Cristobal to present value. If Morrison Knudsen's accounting expert disagrees, he can so testify. Other changes to Mr. Brough's report will attempt to bring the damage calculations up to date, and the closer such calculations are made to the day of trial the more accurate they will

13

be when presented to the jury. There is thus no basis for denying MK Gold the opportunity to file Mr. Brough's updated expert report.

## CONCLUSION

For the reasons set forth above, Morrison Knudsen's Motion to Prohibit Plaintiff MK Gold From Filing Additional Expert Reports should be denied.

DATED this 26th day of February, 2001.

VAN COTT, BAGLEY, CORNWALL & MCCARTHY

By: /s/ David A. Greenwood
David A. Greenwood
Stephen K. Christiansen
Attorneys for Plaintiff MK Gold Company

14

277:224400v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _26th_ day of February, 2001, I caused a true and correct copy of MK GOLD'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PROHIBIT PLAINTIFF MK GOLD FROM FILING ADDITIONAL EXPERT REPORTS to be hand delivered, to the following counsel of record:

> Brent O. Hatch, Esq.
> HATCH, JAMES & DODGE
> 10 West Broadway, Suite 400
> Salt Lake City, Utah  84101
>
> Alan L. Sullivan, Esq.
> SNELL & WILMER
> Gateway Tower West
> 15 West South Temple, Suite 1200
> Salt Lake City, Utah  84101

_/s/ David A. Greenwood_

277:224400v1

Exhibits/Attachments to this document have **not** been scanned.

Please see the case file.