

Brent O. Hatch (5715)
Mark R. Clements (7172)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MK GOLD COMPANY,<br><br>Plaintiff,<br>v.<br><br>MORRISON KNUDSEN CORPORATION, a Delaware corporation,<br><br>Defendant. | **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO PROHIBIT PLAINTIFF MK GOLD FROM FILING ADDITIONAL EXPERT REPORTS** |
| LEUCADIA NATIONAL CORPORATION, a New York corporation,<br><br>Plaintiff,<br>v.<br><br>MORRISON KNUDSEN CORPORATION, a Delaware corporation, ROBERT A. TINSTMAN, an individual, STEPHEN G. HANKS, an individual, and JOHN DOES 1-10, individuals,<br><br>Defendants. | Civil No. 2:96CV00935St<br><br>Civil No. 2:98CV 0327S<br><br>Judge Ted Stewart<br><br>Magistrate Judge Ronald N. Boyce |



Defendant Morrison Knudsen Corporation ("MKC"), now known as Washington Group International ("Washington"), respectfully submits the following Reply Memorandum in Support of Motion to Prohibit Plaintiff MK Gold Company ("MK Gold") from Filing Additional Expert Reports.

**RESPONSE**

MK Gold's Opposition Memorandum is replete with misrepresentations. Given that the hearing in this matter is scheduled for tomorrow morning, MKC briefly responds below to the two most relevant and egregious examples.

1. **"Morrison Knudsen cannot demonstrate any prejudice that would flow from allowing MK Gold to file its expert reports."**

This statement is simply false. MK Gold has filed two substantial expert reports on the eve of trial in this case. MKC does not have adequate time to respond to those reports and will be substantially and unduly prejudiced.

MKC must retain an expert to rebut the expert report of Mr. McAllister. It is absolutely disingenuous for MK Gold to represent to the Court that MKC has already retained Doug Silver to issue an expert report and respond to Mr. McAllister. (MK Gold's Opp. Mem. at 10 ("Mr. Silver is Morrison Knudsen's expert and presumably he will respond to Mr. McAllister.")) Mr. Silver was not retained as an expert witness in this case. His report was issued pursuant to the terms of the Noncompete Agreement. MKC's counsel had no contact or involvement with Mr.

Silver prior to the time he filed his reports and did not represent Mr. Silver at his deposition. MK Gold was fully aware of this fact.[1]

The recently produced expert report from MK Gold's witness, Mr. McAllister, was prepared over the course of several months. MKC is entitled to have sufficient time to retain an rebuttal expert, bring that expert up to speed in the same manner that Mr. McAllister came up to speed over the last several months, allow that expert to review the documents, drafts, and notes Mr. McAllister generated in preparing his report, and then allow the expert sufficient time to prepare an expert report. MKC also is entitled to have a full opportunity to consult with the expert and prepare to take Mr. McAllister's deposition. Moreover, despite repeated requests from MKC, MK Gold has still refused to produce drafts and notes prepared by Mr. McAllister as well as the documents Mr. McAllister relied upon in creating his report. MK Gold is seeking over $99 million in damages related to the San Cristobal Project. Previously MK Gold was seeking approximately $12 million in damages. The suggestion that there is no prejudice to MKC by allowing MK Gold to submit new expert reports which dramatically change the case on the eve of trial is absurd.

MKC will be similarly unduly prejudiced if MK Gold is allowed to introduce Mr. Brough's new damage report at trial. This report should have been filed months ago. Even assuming that Mr. Brough could not have completed his report until after he received financial information regarding San Cristobal, Mr. Brough had all necessary information at least six weeks

---

[1] In fact, MK Gold refused to pay the expenses incurred in deposing Mr. Silver because they claimed that Mr. Silver was only "a fact witness" and not an expert. In any event, MKC is entitled to designate its own expert witnesses and does not need the MK Gold's assistance in doing so.

prior to the time he filed his report yesterday. That report, which is substantially more detailed and different that Mr. Brough's prior report, claims that MK Gold's purported damages are now more than ten times greater than any damage amount MK Gold previously asserted. It would be extremely prejudicial to MKC if it were not allowed sufficient time and opportunity to complete expert discovery regarding the San Cristobal Project and regarding MK Gold's other eleventh hour damage claims and theories prior to trial in this case. The limited time remaining before trial, particularly given that MKC is in the process of preparing for a several week trial, is insufficient.[2]

**2. "Morrison Knudsen substantially delayed the San Cristobal discovery so now cannot complain when Mr. McAllister filed his expert report shortly after the Apex depositions."**

Again this statement is simply false. On February 20, 2001, MK Gold delivered to MKC's counsel a copy of the expert report of Frank McAllister. The report is several pages long and states that Mr. McAllister reviewed approximately 95 articles or reports on the San Cristobal Project. Mr. McAllister generally concludes that although there is substantially more zinc and lead than silver at the San Cristobal Project, it one were to allocate ***all*** of the costs of mining, transporting, and smelting to zinc and lead and ***none*** of the costs to silver, the net revenues from the project would favor silver. This remarkable theory is certainly new to this case and will require a detailed response from MKC.

MKC did not do anything to prevent Mr. McAllister from filing his expert report several weeks earlier than he did. MK Gold asserts that MKC's discovery motions somehow delayed the

[2] This is particularly true given that MK Gold, despite repeated requests from MKC, has still not produced notes and drafts created by Mr. Brough nor the documents he relied upon.

process. This is untrue for several reasons. MKC filed a motion to quash the subpoena MK Gold served on Apex because the subpoena was overly broad and intrusive. MK Gold's counsel called counsel for MKC and said that they were working with Apex to modify the subpoena. MKC agreed that MK Gold would not be obligated to file a response to the motion pending a cooperative resolution with Apex. MK Gold and Apex subsequently agreed to a modified subpoena, MKC withdrew its Motion, and MK Gold never filed a response. There was no delay whatsoever.

MK Gold also claims that Mr. McAllister's report was somehow delayed by MKC's filing of a motion for protective order regarding the disclosure of confidential financial information.[3] This information, of course, is entirely irrelevant to the issue of what metals will be produced from the San Cristobal Project. Indeed, MK Gold admits that it has had access to relevant documents regarding San Cristobal for the "last several months." (MK Gold's Opp. Mem. at 13.) For that matter, MK Gold stated in November of 1998 that it would shortly appoint an expert to issue a report on the metals to be produced from the San Cristobal Project. (See Exh. 1 to MKC's Opening Mem.) MKC received that report yesterday.

MK Gold next claims that Mr. McAllister's report was delayed because of depositions of Apex witnesses. Mr. McAllister's report does not rely on, and therefore could not have been delayed by, the depositions of Apex. In fact, Mr. McAllister's report ignores that deposition

---

[3] MK Gold's principle argument to the Court as to why the handful of financial documents should be produced (MKC had already produced the vast majority of the documents, including all documents Mr. McAllister claimed he relied upon) was that Apex had already produced the relevant documents.

testimony. The reason is obvious. Apex representatives repeatedly testified that 70% of the net revenues from the San Cristobal Project would result from zinc and lead.

MK Gold finally claims that MKC has purportedly not complied with the discovery deadline so MK Gold should not be held to the deadline. Again, MK Gold has misrepresented the record. MKC repeatedly asked MK Gold to produce a 30(b)(6) witness on the San Cristobal Project within the discovery period ending January 31, 2001. The earliest MK Gold would make any witness available was February 5, 2001. During that deposition, it became apparent that MK Gold had failed to produce substantial documents regarding the San Cristobal Project. Some of those documents were subsequently produced on February 12th and others were produced on February 26th. MK Gold still has failed to produce additional relevant documents requested by MKC, including highly relevant computer programs and analysis regarding the San Cristobal Project. In contrast to MK Gold, MKC, expressing concerns about the rapidly approaching trial date, made all of its witnesses available for deposition in early December. Mr. McAllister's report could and should have been filed several weeks ago at the very latest. The fact that it was filed on the eve of trial and only after MKC was required to file the present Motion is in no way a result of any act by MKC.

**CONCLUSION**

For the foregoing reasons, the expert reports MKC recently produced should be stricken, and MK Gold should be prohibited from filing any additional expert reports in this case. In the alternative, the trial should be postponed until MKC has had an adequate opportunity to conduct

the necessary discovery. MKC should not be unduly prejudiced by MK Gold's complete failure to comply with its discovery obligations relating to expert witnesses.

DATED this 27TH day of February, 2001.

HATCH, JAMES & DODGE

By: ______________________
Brent O. Hatch
Mark R. Clements

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27TH day of February, 2001, I caused a true and correct copy of the foregoing to be delivered to the following in the manner indicated:

Alan L. Sullivan (Via Facsimile and U.S. Mail)
SNELL & WILMER
15 West South Temple #1200
Salt Lake City, UT 84101

David A. Greenwood (Via Hand Delivery and U.S. Mail)
VAN COTT, BAGLEY, CORNWALL & MCCARTHY
50 South Main Street, Suite 1600
Salt Lake City, UT 84145

David L. Arrington (Via Facsimile and U.S. Mail)
DURHAM, JONES & PINEGAR
111 East Broadway, Suite 900
Salt Lake City, UT 84111