Brent O. Hatch (5715)
Mark R. Clements (7172)
HATCH, JAMES & DODGE
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Facsimile: (801) 363-6666

FILED
CLERK, U.S. DISTRICT COURT
26 MAR 01 PM 3:41
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MK GOLD COMPANY,<br><br>Plaintiff,<br>v.<br><br>WASHINGTON GROUP INTERNATIONAL, f/k/a MORRISON KNUDSEN CORPORATION a Delaware corporation,<br><br>Defendant. | Civil No. 2:96CV00935ST<br><br>Civil No. 2:98CV 0327ST<br><br>Judge Ted Stewart<br>Magistrate Judge Ronald N. Boyce |
| LEUCADIA NATIONAL CORPORATION, a New York corporation,<br><br>Plaintiff,<br>v.<br><br>WASHINGTON GROUP INTERNATIONAL f/k/a MORRISON KNUDSEN CORPORATION, a Delaware corporation,<br><br>Defendant. | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO EXCLUDE FROM EVIDENCE TESTIMONY FROM MR. BROUGH REGARDING DAMAGES FROM THE SAN CRISTOBAL PROJECT** |



Defendant Washington Group International, Inc. ("Washington") respectfully submits this Memorandum in Support of its Motion in Limine to exclude from evidence testimony from Mr. Brough regarding Damages from the San Cristobal Project.

Based on his expert report, Brough apparently proposes to testify that MK Gold was damaged to the tune of either $62 million or $99 million because Washington submitted a bid to perform contract mining services at Apex's San Cristobal Project in Bolivia. Brough estimates that the present value of profits to Washington from this project would be either $66 million if Washington performed the mining services for ten years or $99 million if Washington performed the services for the life of the mine.

Even assuming Washington's pursuit of this base metals project was a breach of the Noncompete Agreement, a fact belied by the undisputed testimony of the project's owner, MK Gold's claim to the disgorgement of Washington's future profits must be dismissed. As the Court is aware, Washington will not undertake any mining whatsoever at San Cristobal and will make no profits.[1] Mr. Brough's testimony on what Washington's future profits *would have been* had it been awarded the contract is therefore irrelevant and must be excluded.

In addition, there is no evidence whatsoever that Washington's unsuccessful pursuit of this base metals project has caused lost profits to MK Gold. To recover lost profits relating to San Cristobal, MK Gold must prove to a reasonable certainty that had Washington Group not allegedly breached the Noncompete Agreement, MK Gold would have obtained the San Cristobal Project and the project would have resulted in profits to MK Gold. See Ripsom v.

---

[1] The specific citations and exhibits in support of this Motion and Memorandum are found in Defendant's Reply Memorandum in Support of Motion for Summary Judgment Regarding the San Cristobal Project recently filed with and currently pending before the Court.

2

Beaver Blacktop, Inc., 1988 WL 32071 (Del. Super. 1988) ("Lost profits may be recovered only if the profits can be ascertained with reasonable certainty, and are not speculative or contingent."); J.B.N. Morris v. Homco Inter., Inc., 853 F.2d 337, 344 (5th Cir. 1988) (damages for breach of noncompete agreement only allowed where party shows "that it would have made the sales" and gained the profits "in the absence of competition"); National Controls Corp. v. National Semiconducter Corp., 833 F.2d 491, 496 (3rd Cir. 1987) (vacating award of lost profits holding that "[a]n award of lost profits required speculation ... that, absent [defendant's] breaches, [a third party] would have proceeded with the project and ... would have chosen [plaintiff] as a supplier."). MK Gold has not and cannot meet this burden.

MK Gold does not claim that Apex would have awarded the project to MK Gold if the project had not been awarded to Washington. MK Gold did not even bid on the project, and according to the undisputed testimony of Apex's President, Keith Hulley, "was not qualified" to bid. Mr. Hulley testified that it was Apex's "judgment that MK Gold's experience and scale size of company, scaled operations, was less than [Apex] thought would be competitive from the banking review of bankability standpoint." Mr. Hulley further testified that Washington did not do anything that in any way caused Apex to not enter into any type of business relationship with MK Gold regarding the San Cristobal project.

It is undisputed that Washington will not obtain any profits from San Cristobal and that MK Gold never submitted a bid on the project and has not lost any profits. Any testimony from Brough regarding damage to MK Gold from San Cristobal is irrelevant and lacks foundation and must be excluded.

DATED this 26TH day of March, 2001.

                        HATCH, JAMES & DODGE

By: _____
       Brent O. Hatch
       Mark R. Clements

       Attorneys for Defendant Washington Group
       International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 26TH day of March, 2001, I caused a true and correct copy of the foregoing to be hand delivered to the following:

Alan L. Sullivan
SNELL & WILMER
15 West South Temple, #1200
Salt Lake City, Utah 84101

David A. Greenwood
VAN COTT, BAGLEY, CORNWALL & MCCARTHY
50 South Main Street, Suite 1600
Salt Lake City, UT 84145

_[signature]_